UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

XYLEM, INC.,

    Plaintiff,

v.                     Case No. 8:19-cv-304-T-33TGW

JEDIDIAH CHURCH and SYNERGY
EQUIPMENT,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of
Plaintiff Xylem, Inc.'s Motion for Temporary Restraining
Order (Doc. # 2), filed on February 5, 2019. For the reasons
that follow, the Motion is denied to the extent it seeks a
temporary restraining order but is referred to the Honorable
Thomas G. Wilson, United States Magistrate Judge, to
determine whether entry of a preliminary injunction is
warranted. See Textron Fin. Corp. v. Unique Marine, Inc., No.
08-cv-10082, 2008 WL 4716965, at *5 (S.D. Fla. Oct. 22,
2008)("The primary difference between the entry of a
temporary restraining order and a preliminary injunction is
that a temporary restraining order may be entered before the
defendant has an adequate opportunity to respond, even if
notice has been provided.").

1

## I.  **Background**

Plaintiff Xylem is a water technology firm. (Doc. # 1 at ¶ 7). Defendant Jedidiah Church was hired by Xylem on May 29, 2011, and on that date, Church signed Xylem's standard Confidentiality and Non-Competition Agreement. (Id. at ¶ 18). Among other detailed provisions, the Agreement contains a two-year restriction on Church's ability to work for a competitor after ending his employment with Xylem. The Agreement also contains a non-solicitation provision, among other covenants and restrictions.

Church started out as a dispatcher, but was promoted to Operations Coordinator, and then to Outside Sales Representative, and finally to Branch Manager. (Id. at ¶¶ 8-17). Church worked for Xylem for almost seventeen years and was extremely successful. (Id. at ¶¶ 15, 16). "During the one year that Church was [B]ranch [M]anager, the branch's gross revenue was over $17 million, the highest amount of sales in that branch ever up to that date." (Id. at ¶ 15).

On October 9, 2017, "Church suddenly resigned from Xylem, stating that he was relocated back to the Northeast for family reasons." (Id. at ¶ 39). Church told Xylem that he was going to work for United Rentals in Massachusetts. (Id.

at ¶ 40). However, Xylem alleges that Church was really working for United Rentals in Florida, and wrongfully "soliciting Xylem's Florida customers." (Id. at ¶ 41). There were some negotiations between Xylem and Church in which Xylem tried to entice Church to come back as an employee. (Id. at ¶¶ 43-45). During those negotiations, which were not fruitful, Xylem was not aware of Church's alleged breaches of the Agreement. (Id. at ¶ 43).

Thereafter, Xylem discovered that Church accepted the position of District Manager for a direct competitor, Defendant Synergy Equipment, in Lakeland, Florida. (Id. at ¶ 46). On November 30, 2018, Xylem sent Church a cease and desist letter. (Doc. # 1-2). That letter pointed out that Church is in violation of the Agreement and has solicited the following customers of Xylem: John H. Granger Maintenance & Construction; Killebrew, Inc.; PCL Civil Constructors, Inc.; C&R Distribution, Inc.; Vogel Brothers Building Company; Layne Christensen Company; Hillsborough County Clerk of Circuit Court; City of Tampa; and Toho Water Authority. (Id. at 3). The letter warned Church: "Unless Xylem receives immediate assurance from you and Synergy that you will comply with the post-employment obligations in your Agreement including the cessation of soliciting Xylem customers, Xylem

intends to move for injunctive relief to remedy these violations and prevent future violations." (Id. at 4).

Months later, on February 5, 2019, Xylem filed a Verified Complaint initiating the present action, asserting the following claims: Count I for Breach of Contract – Non-Competition Agreement (against Church); Count II for Costs and Attorneys' Fees – Confidentiality and Non-Competition Agreement (against Church); Count III for Tortious Interference with Contract – Confidentiality and Non-Competition Agreement (against Synergy); Count IV for Breach of Contract – Confidentiality Agreement (against Church); and Count V for Tortious Interference with Business Relationships (against Synergy). (Doc. # 1).

Xylem's Verified Complaint seeks broad injunctive relief (both temporary and permanent) as well as damages. For instance, Xylem seeks an Order enjoining Church from competing with Xylem, from soliciting Xylem's customers, and also requiring Church to return all of Xylem's Confidential Information. Xylem also seeks an award of actual damages in amounts to be determined at trial and disgorgement of all profits made as a result of Church's breach of the Agreement. Xylem indicates: "Because Xylem's remedies at law are inadequate, Xylem also seeks temporary and permanent

injunctive relief to restrict Synergy's future or continued interference with Xylem's business relations." (Id. at ¶ 102).

In connection with the filing of the Verified Complaint, Xylem filed a Motion for Temporary Restraining Order (Doc. # 2), requesting that the Court, on an ex parte basis:

(a) Enjoin Church from breaching his Agreement with Xylem by working for a competitor, Synergy;
(b) Enjoin Church and Synergy from soliciting Xylem customers with respect to any business substantially similar to Xylem's;
(c) Enjoin Church and Synergy from using any of Xylem's Confidential Information for any reason; [and]
(d) Order Synergy and Church to preserve in place any Xylem Confidential Information in either Defendants' possession and to permit a forensic search to identify all Xylem Confidential Information in their possession.

(Doc. # 2 at 2). Xylem has supplied the Court with a proposed Temporary Restraining Order (Doc. # 2-1). The proposed injunction bars the relationship between Church and Synergy and enjoins the activities enumerated above for a period of 14 days. By operation of law, and as its title aptly suggests, a temporary restraining order is a temporary measure, which usually expires in 14 days. Chanel, Inc. v. HerChanel.com, No. 13-cv-61591, 2013 WL 4047380, at *2 (S.D. Fla. Aug. 9, 2013). Here, although Xylem's Motion is titled as one seeking a temporary restraining order, it is reasonable

to construe the Motion as also seeking a preliminary injunction, which would remain in effect until the claims can be decided on the merits.

## II. **Discussion**

A court may issue a temporary restraining order if the movant establishes: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). "The movant bears the burden of establishing entitlement to a temporary restraining order." Edwards v. Cofield, No. 3:17-CV-321-WKW, 2017 WL 2255775, at *1 (M.D. Ala. May 18, 2017)(citing Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034–35 (11th Cir. 2001)).

"Before addressing whether [Plaintiff has] met this four-prong showing, however, the Court must first consider whether [Plaintiff has] shown adequate justification for failing to give notice to the Defendants." Emerging Vision, Inc. v. Glachman, No. 10-80734-CIV, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010), report and recommendation adopted,

No. 10-80734-CIV, 2010 WL 3293351 (S.D. Fla. Aug. 11, 2010).

A court may issue a temporary restraining order without notice

to the adverse parties or their attorneys only if:

> (A) specific facts in an affidavit or a verified
> complaint clearly show that immediate and
> irreparable injury, loss, or damage will result to
> the movant **before the adverse party can be heard in
> opposition;** and
> (B) the movant's attorney certifies in writing any
> efforts made to give notice and the reasons why it
> should not be required.

Fed. R. Civ. P. 65(b)(1)(A); (B)(emphasis added).

"To obtain *ex parte* relief, a party must strictly comply

with these requirements. They are not mere technicalities,

but establish minimum due process." Emerging Vision, Inc.,

2010 WL 3293346, at *3 (citations and internal quotation marks

omitted). A plaintiff cannot evade the requirements of Rule

65(b)(1) and "obtain an *ex parte* restraining order by merely

pointing to the merits of its claims. Indeed, such an argument

would swallow Rule 65(b)(2)'s requirement that the court

consider not only the 'need for the restraining order,' but

also 'the need for proceeding *ex parte.*'" Adobe Sys., Inc. v.

S. Sun Prod., Inc., 187 F.R.D. 636, 641 (S.D. Cal.

1999)(citations omitted).

Here, it is obvious that counsel for Xylem has been in

contact with Church, if not both Defendants.  Xylem sent cease

and desist communications in November of 2018. The Court is not convinced that it is appropriate to grant ex parte relief when Xylem has been aware of the offending conduct for months and has only now sought injunctive relief. And, Xylem's counsel has not truly provided a certification concerning any efforts made to give notice and why notice should not be required. Instead, Xylem merely contends: "Church and Synergy have already contracted with three of Xylem's long-standing customers" and Defendants' "success in contracting with Xylem's customers thus far is clear evidence that further damage to Xylem is so imminent that the requested temporary restraining order should be granted without notice or a hearing." (Doc. # 2 at 20); see Kazal v. Price, No. 8:17-cv-2945-T-23AAS, 2017 WL 6270086, at *4 (M.D. Fla. Dec. 8, 2017)(denying motion for temporary restraining order in part because "[t]he plaintiffs' attorneys fail[ed] to submit an affidavit certifying an effort to notify [the defendant] about the motion and fail[ed] to explain the necessity for an ex parte order"). Xylem's "failure to provide the information required under Rule 65(b)(1)(B) is fatal to its request for TRO without notice." Living v. Merscorp Inc., No. 1:10-CV-3410-JEC-JFK, 2010 WL 11552958, at *3 (N.D. Ga. Oct. 26,

2010), <u>report and recommendation adopted</u>, No. 1:10-CV-3410-JEC, 2010 WL 11553003 (N.D. Ga. Dec. 17, 2010)

In short, Xylem has not provided "specific facts . . . [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The Court is mindful that "'[a]n *ex parte* temporary restraining order is an extreme remedy to be used only with the utmost caution,' and the Court is unwilling to permit use of this extreme remedy in light of these deficiencies." <u>Thomas-McDonald v. Shinseki</u>, No. CV 113-050, 2013 WL 12121316, at *1 (S.D. Ga. Apr. 3, 2013)(quoting <u>Levine v. Comcoa Ltd.</u>, 70 F.3d 1191, 1194 (11th Cir. 1995)). Therefore, the Motion is denied to the extent it seeks a temporary restraining order.

However, to the extent the Motion can be construed as requesting a preliminary injunction, the Court refers the Motion to Magistrate Thomas G. Wilson, pursuant to 28 U.S.C. § 636(b)(1)(B), for an evidentiary hearing and issuance of a Report and Recommendation. The parties will be able to raise their arguments concerning the propriety of injunctive relief at the hearing.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff Xylem, Inc.'s Motion for Temporary Restraining Order (Doc. # 2) is **DENIED** to the extent it seeks a temporary restraining order.

(2) To the extent the Motion is construed as seeking a preliminary injunction, the Motion is referred to the Honorable Thomas G. Wilson, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for an evidentiary hearing and the issuance of a Report and Recommendation.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>6th</u> day of February, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE